No. 29,025.

The North Wichita Drainage District of Sedgwick County, *Plaintiff*, v. The Board of County Commissioners of the County of Sedgwick, *Defendant.*

(278 Pac. 32.)

Opinion on declaratory judgment filed June 8, 1929.

*Robert C. Foulston, George Siefkin, Sidney L. Foulston, Lester L. Morris* and *George B. Powers,* all of Wichita, for the plaintiff.

*Clyde M. Hudson,* county counselor, for the defendant.

The opinion of the court was delivered by

Burch, J.: The form of the action is mandamus. The purpose is to obtain a declaratory judgment determining whether the drainage district or the board of county commissioners shall bear the expense of certain bridge work rendered necessary by certain drainage work. The case is stated by defendant as follows:

"The proceeding is brought to compel the defendant, the board of county commissioners of Sedgwick county, to do two things: First, to build new bridges at certain points where the drainage ditches cross the public highways; second, to remove, relocate, and reconstruct certain bridges at points where the drains and ditches of plaintiff cross the public highways."

"The drainage district, plaintiff herein, has heretofore, by proper and lawful procedure, decided upon the digging of certain extensive drainage ditches. These ditches in some places constitute a widening and straightening of existing watercourses, and in other places they diverge entirely from existing streams or watercourses. . . . So the facts before this court are that a drainage ditch is being dug to cross certain highways, and where it crosses those highways new bridges must be built at the expense either of the district constructing the ditches or of the county in which the district is located."

The drainage district was incorporated under the provisions of chapter 163 of the Laws of 1925. (See *State, ex rel., v. North Wichita Drainage District*, 127 Kan. 207, 272 Pac. 177.) That act contained the following provisions:

"Sec. 5. When and after a charter of incorporation shall have been granted to a drainage district as herein provided, all future duties, powers, rights, authority, limitations and restrictions of the powers of said drainage district shall be fixed and determined by the provisions of article 4, chapter 24, of the Revised Statutes of the state of Kansas, 1923. . . ."

Article 4 of chapter 24, R. S. 1923, grants to drainage districts very extensive powers, but power to bridge altered and diverted watercourses, and power to bridge canals, ditches and drains is not conferred. Indeed, the county board frankly concedes plaintiff was not granted express power to build or to relocate or reconstruct highway bridges. The county board suggests, however, that since drainage work results in special benefit to the drainage district doing the work, public policy requires that the district should bear the expense, and consequently that power to do the bridge work rendered necessary by drainage work should be implied. The legislature fixes the public policy of the state in respect to drainage, highways and bridges, and in this instance the relation of drainage work to highways and bridges was not overlooked:

"*Fifth*. To prescribe, regulate and fix the height of the superstructures above the water, the length of all spans, and the location of the piers of all bridges across watercourses situated in the district.

"*Seventh*. To fix, regulate and change the grade or elevation of all public highways, railroads and street railroads at points where any levee may cross or intersect the same.

"*Ninth*. To enjoin the placing or maintenance in any natural watercourse of any unauthorized bridge, embankment, pier, or other work or structure constituting to any extent whatever an obstruction to the flow of the water." (R. S. 24-407, ch. 24, art. 4.)

There are other provisions in article 4, and in other articles of chapter 24, giving drainage districts authority to regulate bridges, but not to construct or reconstruct them. Something of the policy of the legislature is indicated by the grant of power to drainage districts organized under the provisions of article 5:

"Every drainage district incorporated under the provisions of this act shall have power: . . . *Sixth,* to require that all bridges across such watercourses shall be of sufficient length or that they shall be provided with sufficient trestle-work to permit the unobstructed flow of the waters at flood time. *Seventh,* to construct cut-offs, spillways, and auxiliary channels across railways and

highways, to compel the adequate bridging of the same, and to compel the raising of the grades of such railways and highways as hereinafter provided." (R. S. 24-512.)

The same policy is indicated in R. S. 68-1401.

The financial powers of drainage districts organized under the provisions of article 4 are limited to levy of taxes, assessments and special taxes, and the issuance of bonds, for drainage purposes, and not for highway and bridge purposes. Subdivisions twelfth and thirteenth of R. S. 24-407 speak of improvements by drainage districts that may be conducive to the public health, convenience and welfare. It would conduce to public convenience and welfare to construct bridges across ditches and changed watercourses, but other provisions of the statute show the public welfare referred to consists in benefits resulting from handling water. Drainage districts are concerned with ways and means of protecting against and disposing of surplus water. The board of county commissioners is given plenary jurisdiction over the subjects of highways and bridges. (R. S. 1923, ch. 68.)

R. S. 24-407 is section 7 of chapter 215 of the Laws of 1905. The section was modified in 1920 to embrace a provision relating to dams, and was revised in 1923 to eliminate reference in the statute of 1920 to the court of industrial relations. In other respects the section stands as the general grant of power to the drainage district. In 1916, in the opinion in the case of *Jefferson County v. Drainage District*, 97 Kan. 302, 155 Pac. 54, the court interpreted the section in an action by a county to recover from a drainage district the cost of constructing highway bridges over the drainage district's ditches. The syllabus reads:

"A drainage district organized under chapter 215 of the Laws of 1905 is a public corporation created by the legislature to perform public functions. Neither by common law nor by statute is any duty imposed upon the drainage district to build or maintain bridges where its ditches cross a public highway, and therefore the board of county commissioners cannot maintain an action against the district to recover the expense of constructing such bridges."

In the opinion it was said:

"The fact that the construction of the drains and ditches was intended to and does improve and render more valuable the lands of private individuals, who alone are charged with the cost of the improvement, makes the corporation none the less a quasi public one. Nor does that fact in any sense relieve the county from its duty to maintain and keep the public highways in fit condition for travel. In the act authorizing the creation of the drainage dis-

trict the legislature made no provision for the payment by the district of the expense of erecting these bridges. No authority is given the district to levy a tax or assessment upon the lands benefited by the drainage system to pay for bridges. . . ." (p. 304.)

The declaration must be that the drainage district has no power to do the bridge work rendered necessary by execution of the drainage project, and the work of constructing, removing, relocating and reconstructing the bridges should be done by the board of county commissioners.

# JULY TERM, 1929.

## PRESENT:

Hon. WILLIAM A. JOHNSTON, Chief Justice.

Hon. ROUSSEAU A. BURCH,
Hon. JOHN MARSHALL,
Hon. JOHN S. DAWSON,
Hon. W. W. HARVEY, } Justices.
Hon. RICHARD J. HOPKINS,
Hon. WM. EASTON HUTCHISON,